U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

2014 JUN 18  AM 11: 08

CLERK

BY _____
DEPUTY CLERK

)
RHONDA TAYLOR, individually and as )
personal representative of the estate of )
MACADAM LEE MASON, by and )
through its ADMINISTRATRIX, )
RHONDA TAYLOR )
      Plaintiffs, )
      v. )   Docket No. **1:14-cv-123**
)
VERMONT STATE SENIOR TROOPER )
DAVID SCHAFFER, IN HIS )
INDIVIDUAL AND OFFICIAL )
CAPACITIES; VERMONT STATE )
POLICE DET. SGT. DAVID ZORN, IN )
HIS INDIVIDUAL AND OFFICIAL )
CAPACITIES; COL. THOMAS )
L'ESPERANCE, COMMANDER OF THE)
VERMONT STATE POLICE, IN HIS )
INDIVIDUAL AND OFFICIAL )
CAPACITIES; AND, COMMISSIONER
KEITH FLYNN IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES,
      Defendants

## COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their undersigned counsel, hereby complain against the above-

named Defendants, demand a jury trial and assert the following allegations in their

totality and in their alternatives.

## NATURE OF CLAIM

1. The Plaintiffs seek judgments and damages based on deprivations of the decedent's,

Macadam Lee Mason's, constitutional rights, pursuant to the 42 U.S.C. § 1983 as Mason

was killed by Defendant Shaffer's unreasonable and excessive use of force, firing a Taser

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

into the decedent's chest causing cardiac arrest, all in violation of the Fourth

Amendment's prohibition against unreasonable arrests and excessive use of force. In

addition, this action is brought pursuant to Vermont's Wrongful Death Statute, 14 V.S.A.

§ 1492, Vermont's Personal Injury Survivor Statute, 14 V.S.A. § 1453, violations of the

decedent's rights as a person with a disability pursuant to both the Americans with

Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, Section 504 of the Vocational

Rehabilitation Act (§ 504 or Rehabilitation Act), 29 U.S.C. § 701 et seq., and common

law torts of negligence, intentional infliction of emotional distress as well as assault and

battery, and loss of her son's consortium by Rhonda Taylor.

### PARTIES

2. Plaintiff, Rhonda Taylor, is a natural citizen of the United States and resident of the

Town of Moultonborough in the county of Belknap, in the State of New Hampshire. She

is the mother and personal representative of Macadam Lee Mason ("Plaintiff Mason" or

"Mason").

3. On or about July 5, 2012, Plaintiff Taylor filed a petition to open an estate on behalf of

her son, Plaintiff Mason. On or about August 9, 2012, Plaintiff Taylor was issued a

certificate of appointment as the administratrix and sole legal representative of the estate

of her son, Plaintiff Mason, by Order of Orange County Probate Judge Bernard Lewis. A

copy of which is attached to this complaint. Rhonda Taylor serves in that capacity as of

this date.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

4. The deceased Plaintiff Mason, date of birth February 4, 1973, was at all times pertinent to the matters that are subject of this complaint a resident of the State of Vermont residing at the home of Theresa Davidonis at 1100 Sawnee Bean Road in Thetford in the County of Orange and the State of Vermont. It was at this location that Plaintiff Mason was killed by a Taser shot by Defendant Vermont State Police ("VSP") Senior Trooper David Shaffer.

5. The Taser used to kill Mason was provided to Defendant Shaffer by Defendants L'Esperance and Flynn.

6. Plaintiff Mason, through his personal representative, brings this action as he was the victim of a homicide attributable to one or more of the Defendants. On June 20, 2012, Mason died after he was subjected to an unconstitutional seizure due to the use of unreasonable and excessive force. He was shot in the chest by Defendant Shaffer with an electronic control devise (ECD), also known as a "Taser."

7. As determined by the Deputy Chief Medical Examiner of the State of New Hampshire, Jennie V. Duval, M.D., Defendant Shaffer's discharge of his ECD into Plaintiff Mason's chest was the proximate cause of Mason's death; as stated in her Autopsy Report the cause was "[S]udden cardiac death due to conducted electrical weapon discharge."

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

3

8. Based upon information and belief, Defendant Shaffer has at all times pertinent to this complaint, and presently is employed as an officer with the VSP having obtained the rank of senior trooper.  Defendant Shaffer is named in both his official and individual capacities.

9. Based upon information and belief, Defendant David Zorn is, and has been at all times pertinent to this complaint, been employed by the VSP and presently has obtained the rank of detective sergeant.  Defendant David Zorn is named in his individual and official capacities.

10. Based upon information and belief, Defendant Thomas L'Esperance is, and has been at all times pertinent to this complaint, assigned the rank of colonel and is the commanding officer of the VSP.  Defendant Col. L'Esperance is named in his individual and official capacities.

11. Pursuant to 20 V.S.A. §§ 1911-1914, VSP is a division within the Department of Public Safety ("DPS"), and is therefore a subdivision of a department of state government.   VSP has its offices at 103 S. Main Street, Waterbury, Vermont, 05676.

12. Upon information and belief, VPS receives federal funding, thus triggering § 504 jurisdiction.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

4

13. Based on information and belief, Defendant Keith Flynn is now, and was at all times pertinent to the matters that are the subject of this complaint, the commissioner of the DPS and acted as the chief executive officer thereof. DPS is located at 103 S. Main St., Waterbury, VT. Defendant Flynn is named in his individual and official capacities.

14. Upon information and belief, DPS receives federal funding, thus triggering § 504 jurisdiction.

## JURISDICTION

15. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343 over the deprivations of the decedent Plaintiff Mason's in violation of his constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from excessive use of force during his arrest as statutorily implemented by 42 U.S.C. § 1983

16. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the Americans with Disabilities Act (ADA) claim and the Rehabilitation Act claim pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a.

17. Pursuant to 28 U.S.C. § 1331 and § 1343, this Court has supplemental jurisdiction as to the common law claims that are so related to the § 1983, ADA and § 504 claims that form part of the same case or controversy.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

18. This Court has personal jurisdiction over Defendants Shaffer, Zorn, L'Esperance and Flynn. Upon information and belief, each individual named is a resident within the District of Vermont. Further, each individual Defendant provides services to persons within the District. Finally, all acts or omissions giving rise to this cause of action occurred in this District.

## VENUE

19. Venue is proper in this Court as each of the Defendants conduct business within, and either resides or has offices located within the District. In addition, Plaintiff Mason resided at all times relevant until his untimely demise on June 20, 2012 within the District of Vermont, and because the events and all the acts or omissions giving rise to these claims occurred within this District.

## FACTS

20. Plaintiff Mason sustained a serious head injury in a motor vehicle accident that he had at age 18 that resulted in his having a Traumatic Brain Injury (TBI).

21. This condition caused Mason to have a seizure disorder for the remainder of his life, including a seizure on the day before he was killed by the conduct of the Defendants.

22. In addition to his seizure disorder from his TBI, Mason carried the following diagnoses as of March 21, 2012, the date of the report of his treating mental health

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

6

professional, Dr. Eve Zukowski of the Clara Martin Center -- paranoid personality

disorder, post traumatic stress disorder, intermittent explosive anger disorder, social

phobia and polysubstance dependence in remission.

23.   Mason had a seizure on June 19, 2012.  Mason routinely exhibited erratic and

problematic behaviors on the day following his having a seizure.

24.  His life partner, Theresa Davidonis, understood and accepted this pattern in Mason's

behavior.

25.  Ms. Davidonis had learned that during these periods following his seizure activity,

Mason was best left to his own devices and allowed the time and space to process his

post-seizure activity.

26.  On June 20, 2012, Mason called his mental health case worker at the Clara Martin

Center, a community mental health agency, located in Bradford, Vermont and reported

that he was having a difficult time and was having suicidal ideations.

27.  In response to this call, Clara Martin Center personnel instructed Mason to contact

his neurologist at Dartmouth Hitchcock Medical Center (DHMC) in Hanover, NH.

28.  A woman named "Susan" (last name not noted in VSP dispatch records) from

DHMC placed a call at 3:05 P.M on June 20, 2012 to VSP dispatch.  Her call was in

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

response to a call received by DHMC from an unidentified person.  This person hung up when he was told that DHMC would call the police if he did not come into the hospital voluntarily.

29.  "Susan" told VSP Dispatch that the caller had identified himself alternately as "God" or "Toby Bent."  She further reported that the caller had stated that he wanted to slit his throat in the back yard.

30. DHMC through a reverse phone check determined that the caller was Mason as the phone number derived from that check was that of Theresa Davidonis, Mason's life partner.

31.  During her initial call at 3:05 P.M., "Susan" from DHMC asked that the state police check on Mason's welfare.

32. DMHC's "Susan" called VSP Bradford Barracks a second time at 3:40 P.M. on June 20, 2012 to inquire as to whether the state police had made contact with the caller believed to be Mason.

33.  During this second call, "Susan" informed VSP Dispatch that the caller had called DHMC again, and reported that the call said that if police came to his location, he hoped that they would shoot him.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

34.   Mason had been previously diagnosed by DHMC's neurology department as having a seizure disorder (TBI induced).  He was also diagnosed with mental illness.

35.  As of the date of his death, June 20, 2012, Mason had a history of these conditions.

36.  Mason's mental conditions resulted in substantial limitations on one or more of his major life activities.

37.  As such, Defendants had knowledge of these ADA qualifying impairments and history of same, see paragraphs 28 through 33 *ante*.  Therefore, Defendants had an affirmative duty to afford Mason reasonable accommodation pursuant to the ADA and § 504 of the Vocational Rehabilitation Act of 1973 to his substantial limitations which included, on the day in question, his accuracy in perceiving and processing events.

38.  On June 20, 2012 at 3:11 P.M in response to the first call from DHMC referenced at paragraph 28 *infra*, VSP dispatched three VSP officers (Defendant Zorn, Trooper Second Class Abigail Drew and Senior Trooper Charles Schulze) from its Bradford, Vermont barracks to conduct a welfare check at 1100 Sawnee Road in Thetford to determine if Mason was in need of assistance.

39.  Troopers Schulze and Drew were the first to respond and arrived at the scene at 3:56 P.M.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

9

40. Shortly thereafter, at 4:09 P.M., in response to a call believed to be from Defendant Zorn who was Officer-In-Charge (OIC) of this matter, VSP dispatch attempted to contact Theresa Davidonis at her place of work, Ado Hair Salon, located in Fairlee, Vermont.

41. A VSP dispatcher spoke with Ms. Davidonis at 4:13 P.M. and informed her that VSP personnel were at her home looking for Mason.  Dispatch asked Ms. Davidonis to return to her home.

42. During her initial conversation with the VSP dispatcher, Davidonis informed the dispatcher that Mason stated earlier that he was leaving and that no one should be in her house.

43. Davidonis also informed the dispatcher at that time that there were no guns in her house as she was afraid of guns, and that she had never allowed them into her home.

44. VSP Dispatch records show that at 4:23 P.M. Defendant Zorn, while in route to the scene, asked the dispatcher "to have medical come and stage" at the scene.

45. Davidonis arrived at her home at 4:31 P.M. as detailed in the VSP's Investigation Report ("VSP Report") into these events.

46. Upon her arrival, Davidonis informed the Troopers Schulze and Drew that Mason had a seizure the day prior and, in accord with paragraph 25 *infra*, that he needed to be left alone.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

10

47. At that time, Davidonis asked or told all VSP officers to leave her property.

48. At that time, Davidonis told the VSP officers that she would take care of Mason.

49. At 5:13 P.M. on June 20, 2012, Defendant Zorn arrived at the scene and established a command post near the Davidonis residence at 1100 Sawnee Road. Defendant OIC Zorn "monitored the incident from a short distance away from the residence" as reported in the VSP Report.

50. Defendant Zorn was told by Trooper Schulze that Davidonis had arrived, that she had checked the house and that she did not find Mason.

51. Neither Trooper Schulze nor Trooper Drew informed Defendant Zorn or Defendant Shaffer that Davidonis had informed them both that Mason had a seizure the day before and in accord with paragraph 25 *infra*, that he needed to be left alone.  Neither Trooper Schulze nor Trooper Drew informed Defendant Zorn or Defendant Shaffer of that information and that consistent with VSP ECD Policy, Mason should not be shot with a Taser.

52. Neither Defendant Zorn nor Defendant Shaffer inquired of Trooper Schulze or Trooper Drew as to whether they had obtained any pertinent information from their conversation with Davidonis.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

53. Defendant Zorn then requested VSP Trooper First Class Jason Schlesinger to respond to the scene as well. Trooper Schlesinger had reported for his work shift at 4:00 P.M. He reviewed the Computer Assisted Dispatch (CAD) report on the incident, including the fact that the call triggering the Defendants' response came from DHMC complete with information that Mason was then in mental health crisis. Trooper Schlesinger then proceeded to the scene and met with Defendant Zorn.

54. Despite the fact that the CAD report revealed that Mason was in the midst of a mental health crisis, Defendant Zorn who was OIC failed to inform officers on the scene, including Defendant Shaffer, that consistent with the VSP ECD Policy that a Taser should not be deployed against Mason.

55. While awaiting Davidonis' arrival, Trooper Schulze saw and reported what he thought to be movement in the house and a person at the front window.

56. When Davidonis arrived at her home, she spoke with Trooper Schulze. Davidonis then agreed to go into her home to look for Mason as she did not want VSP officers in her home.

57. Davidonis did not find Mason inside of her home when she went looking for him.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

58.  During this visit to her home, Davidonis did eventually speak directly with Mason. Davidonis asked Mason to speak with the police or his mother, Rhonda Taylor, both requests were refused.

59.  As stated in the VSP Report, Trooper Schlesinger heard a male voice (presumed to be that of Mason) arguing with Davidonis when he arrived at the house at a time apparently not captured by dispatch.

60.  Davidonis came around the front of the house and told Schulze that Mason had a seizure the prior day and further told Schulze that she would take custody of Mason at that point.

61.  Schulze told Schlesinger upon Schlesinger's subsequent arrival that he was not needed on the scene and that "we didn't need to ruffle any more feathers than we need to."

62.  At that point in time, Davidonis directed the VSP officers to leave her house and that she would take care of Plaintiff Mason.  She then returned to her place of work, two miles away.

63. As stated in the VSP Report, Trooper Schulze reported that Defendant OIC Zorn had previously said that "if she [Davidonis] was comfortable dealing with him [Mason] her on own and she could handle him and we would leave."

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

64. At 5:52 P.M. on June 20, 2012 dispatch again called Ms. Davidonis at her place of

work to report that "someone is in your house," and that she should return to her

residence to provide the VSP with assistance. Ms. Davidonis informed the dispatcher

that the troopers should "put their guns away because I'm petrified of State Troopers."

65. Despite Davidonis' repeated requests during her second conversation with dispatch

that all VSP personnel leave her premises, the VSP officers did not depart the Davidonis

residence and its surrounding area.

66. In that same, second conversation which commenced at 5:52 P.M, Ms. Davidonis

told the dispatcher "don't agitate him [Mason] ... but I'm agitating him.  Everybody's

agitating him right now."

67. In that same, second conversation which commenced at 5:52 P.M with the

dispatcher, Ms. Davidonis again said, "The best thing, when he has these seizures,..

they're called post-epileptic" seizures is to just leave him alone, and "I've told the officer

that."

68. Upon her arrival at her home at a time not recorded, Ms. Davidonis instructed the

VSP troopers not to go into her home.  Dispatch had previously informed Ms. Davidonis

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

14

that officers would enter her home to hunt for Mason unless she arrived on scene as soon as possible.

69. At 5:43 P.M., Defendant Shaffer reported to dispatch that he was in route to the scene to provide assistance even though he was not requested to do so.

70. Defendant Shaffer had read the CAD report stating that the welfare check on Mason was prompted by a call from DHMC that Mason was in the midst of a mental health.

71. Defendant Shaffer had been to that location repeatedly in the past to deal with Plaintiff Mason who was often intoxicated "and big into drugs," according to Shaffer's statement to the VSP investigation.

72. Defendant Shaffer did not report that Mason had a history of possession of use of dangerous or deadly weapons as there is no such history.

73. Defendant Shaffer arrived on the scene at 6:20 P.M.   Upon his arrival, Defendant OIC Zorn instructed Defendant Shaffer to assist with setting up a perimeter of the residence.

74. Defendant Shaffer "geared" up to establish the perimeter by retrieving DPS/VPS issued M4 rifle as stated in the VSP Report.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

75. Defendant Shaffer then proceeded on foot looking for Mason to a location near Trooper Drew in the woods adjacent to the Davidonis residence.

76. After walking the perimeter back to the location of Defendant Zorn, Troopers Schulze and Schlesinger and their cruisers staged on the road, Defendant Shaffer proceeded to find the largest tree in Davidonis' yard for cover.

77. Shortly thereafter, Defendant Shaffer heard voices coming from the Davidonis residence that were the voices of Davidonis and her son, Eriks Davidonis, who by that time (apparently not captured by dispatch) had together returned to the home pursuant to the dispatcher's request.

78. Next, Defendant Shaffer reported seeing Mason, whom he recognized immediately from their prior contacts, walking out of the woods towards the house.

79. Defendant Shaffer stated that he "couldn't let him get back in to the house."

80. Defendant Shaffer took a few steps out into the yard with his rifle aimed directly at Mason, and stated to Mason, "State Police. Let me see your hands."

81. When he first observed Mason, Defendant Shaffer noted that "[H]e [Mason] stumbled on his feet, it looked like he was about to fall down a couple of times."

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

16

82. Defendant Shaffer observed that as he instructed Mason to show his hands, Mason "...turned, kind of looked like he was in a haze of sorts, saw who I was, I was approaching him with my gun up.  He immediately showed me both of his hands when I told him that."

83. Defendant Shaffer then ordered Mason to the ground.  Again, Mason immediately complied by sitting on his buttocks with his empty hands displayed in front of him.

84. Defendant Shaffer then yelled at Mason and ordered him to lie prone on his stomach. Mason was not so quick to comply, but did not engage in any threatening behaviors.  As Shaffer approached Mason, he continued to holler at Mason to lie on his stomach and stated "then we'll talk about why."

85. Defendant Shaffer reported that when he got to a distance about 40 feet from Mason that everything changed.  Defendant Shaffer claimed that Mason got up, extended his middle finger to Shaffer and repeatedly said "fuck you.  Why don't you just go ahead and shoot me."

86. At this point, Shaffer transitioned from his M4 to X26 Taser.  Shaffer claims that Mason was walking toward him aggressively with his right hand flipping him off and his left hand clenched.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

17

87. Both Theresa Davidonis and her son, Eriks Davidonis, who were in close proximity to both Shaffer and Mason at that moment both saw that Mason walked, not ran, towards Shaffer. Both Theresa Davidson and Eriks Davidonis saw that Mason held his hands in the air, and was not acting aggressively towards Shaffer.

88. Both Theresa Davidson and Eriks Davidonis saw that Mason had no weapon in either hand, or anywhere in his possession, when this confrontation between Shaffer and Mason occurred.

89. Defendant Shaffer claims that he felt threatened by Mason's behavior. Shaffer then discharged his Taser, aiming and hitting Mason squarely in the left chest area adjacent to the location of Mason's heart.

90. Trooper Drew was standing about 50 feet behind Defendant Shaffer when Shaffer was yelling at Mason to get down on the ground. Drew observed Defendant Shaffer was walking towards Mason with his rifle pointed at Mason.

90. Trooper Drew saw that Mason had been compliant with Shaffer's orders until he "stood up and started *walking* towards Trooper Shaffer. And then I heard the clicking and clacking of a Taser and saw MacAdam [sic] go down." Emphasis added.

91. Trooper Drew saw Shaffer advancing towards Mason during this confrontation.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

92.  While standing at a distance of 15 feet from Shaffer and Mason, Trooper Drew did not report hearing any further voice commands or verbal warnings from Defendant Shaffer before she saw Mason fall to the ground.

93.  Trooper Drew did not hear Mason say anything, including "fuck you" and/or "go ahead and shoot me," during the confrontation with Defendant Shaffer.

94.  Trooper Schlesinger was on the back, or low side (down grade of both Shaffer and Mason) of Mason during the confrontation with Defendant Shaffer, and he could see Mason's rear as well as the front of both Shaffer and Drew.

95.  Trooper Schlesinger reported that he saw that Mason's hands were empty, and that he heard Mason say two or three times, "[J]ust fucking shoot me."

96.  Trooper Schlesinger reported that Defendant Shaffer discharged his Taser at Mason from a close distance, about six feet.

97.  The discharge of his Taser by Defendant Shaffer violated the VSP's "Use of Force" policy at § 4.1 because he employed a Taser discharge well in excess of the "amount of force which is reasonable objective to control the situation [and which is] ... reasonable to overcome the resistance or immediate threat that the person poses to the member or others."

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

98. Consistent with the Constitutional inquiry, the reasonableness inquiry must be viewed in light of the totality of circumstances present at that time. Prominent circumstances included that Defendant Shaffer knew that Mason:

A. was in the midst of a mental health crisis, and seemed to be in some sort of a "haze;"

B. was unarmed;

C. was at a considerable tactical disadvantage given that he was located downgrade from Shaffer; and,

D. was smaller in weight and size than Shaffer; and,

E. further, Shaffer knew that there were a total of five VSP officers present with two of the five, Troopers Drew and Schlesinger, were within twenty-five feet of the Mason when he was struck by Shaffer's Taser probes.

99. No other VSP officer displayed either a firearm or an ECD at the scene other than Schlesinger who reported that he drew his Taser as he approached Mason from the rear while Defendant Shaffer had his rifle trained on Mason.

100. Defendant Shaffer violated VSP's "Policy on the Use of Electronic Control Devices" at §3.1(3) by failing to "verbally notify those on the scene by saying `Taser, Taser, Taser' indicating the use of the ECD is imminent."

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

20

101.  Defendant Shaffer's discharge of his Taser under these circumstances is directly contrary to Taser International Product Information Guidance which clearly states that Taser users should not target a subject's "chest/breast" and should not be deployed on infirm persons such as Mason "unless the situation justifies possible higher risk of death or serious injury." The Taser warning goes on to state that police often deal with persons "susceptible to arrest-related death (ARD)," and that population that has a higher risk for ARD includes "a person with a seizure disorder."

102.  Defendant Shaffer was in receipt of this Taser International Product Information Guidance in that DPS and VSP provided Shaffer with the Taser International, Inc. issued "Instructor and User Warning, Risks, Liability Release and Covenant Not to Sue" to Defendant Shaffer which was signed by him at the VSP Training on ECD use, VSP's Taser Recertification attended by Defendant Shaffer on March 15, 2012.

103.  Defendant Shaffer also violated VSP ECD Policy in effect on June 20, 2012 regarding the "Use of Electronic Control Devices," which at § 3.2(2) clearly stated that "[S]pecial consideration must be given to special populations that may be more susceptible to injury from ECD use" such as Mason.

104.  Defendant Shaffer also violated the ECD training that he received from VSP, when Shaffer aimed his Taser and struck Plaintiff Mason in the chest in close proximity to the location of his heart.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

21

105. The Attendance Roster for the VSP Taser Recertification course dated March 15, 2012 reveals that Defendant Shaffer had not attended available training provided by the Vermont Police Academy entitled, "Interacting w/People Experiencing a Mental Health Crisis," also known as "Act 80" training.

106. Defendant Shaffer was one of the 15 of the 16 officers attending the Taser Recertification training on March 15, 2012 who had not received the Act 80 training.

107. According to Defendant VSP dispatch log, Defendant Shaffer discharged his ECD at Plaintiff Mason just a few minutes (three) after his arrival at the scene, pulling its trigger one time and allowing the full five second discharge of 50,000 volts.

108. In addition to acting precipitously without a full chance to assess the scene and the risks involved in deploying his Taser, Defendant Shaffer violated VSP ECD Guidance as well as state and federal anti-discrimination statutes by deploying his weapon against a subject who he had direct and personal knowledge had significant disabilities including seizure disorder.  Shaffer clearly knew that Mason was in the midst of a mental health crisis.

109. By the reports of all eyewitnesses, Mason immediately fell to the ground without bracing his fall with his arms after being struck in the chest by Shaffer's Taser probes.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

110.   Immediately thereafter, Troopers Schlesinger and Drew attempted to handcuff Mason but had difficulty extracting his right arm.

111.   Trooper Schlesinger reported that he was attempting to handcuff Mason while the five second Taser cycle was still running indicating his close proximity to Mason at the time that Defendant Shaffer discharged his Taser at Mason.

112.   Trooper Drew was also close enough to assist Schlesinger in attempting to handcuff Mason before all three officers on the scene (Drew, Schlesinger and Shaffer) realized that Mason was turning blue and in acute distress.  Mason made a gurgling noise.  Mason's eyes rolled into the back of his head displaying only the whites of his eyes to observers.

113.   At that point, Ms. Davidonis and her son Eriks were at the scene of the Tasing with Theresa Davidonis shouting that Mason suffered from seizure disorder and "now you've killed him," or words to that effect.

114.   Defendant Shaffer removed the Taser barbs from Plaintiff Mason's chest.

115.   Trooper Schlesinger sought to administer CPR so Mason's handcuffs were removed.

116.   Defendant Shaffer asked for EMT/paramedics to be dispatched. This occurred at 6:23 PM.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

117.  Defendants Shaffer and Zorn as well as Trooper Schlesinger provided CPR without resort to an automated external defibrillator (AED), until the Upper Valley Ambulance arrived on the scene fourteen minutes later at 6:37 P.M.

118.  Plaintiff Mason did not die immediately upon being hit by the two Taser probes fired at him by Defendant Shaffer.  Mason lived for a substantial period of time after being Tased.  Mason experienced significant pain and suffering as the direct and proximate result of the Defendants' unconstitutional and unlawful actions.

119.  Plaintiff Mason was unarmed and did not pose any significant risk of injury or harm to self or others under the circumstances which existed at the instant that Defendant Shaffer deployed his Taser and shot Plaintiff Mason.

120.  There were no outstanding warrants for Plaintiff Mason's arrest.

121.  Defendant Shaffer did not have probable cause for his arrest as Mason had not committed any crime on the day in question.

122. Upon his arrival at the scene by ambulance, Upper Valley Ambulance, Inc. Paramedic Michael Hanchett became primary patient caregiver.  Hanchett arrived at Mason's side at 6:38 P.M., and immediately connected a monitor/defibrillator to Mason's chest and shocked Mason with no meaningful response.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

24

123.   After two minutes on scene with the monitor in place, Mason had a pulse rate of 64. Mason was then placed on the ambulance cot.  Mason's pulse rate declined so that CPR was again administered.

124.   An intravenous (IV) line was placed successfully after several failed into Mason's right hand.  While in transit to DHMC, Hanchett supplied Mason with a saline solution through the IV along with epinephrine being administered in three separate doses, as well as narcan, sodium bicarbonate and calcium chloride.

125.   Upper Valley Ambulance Service departed the scene at 1100 Sawnee Road at 6:47 P.M. While in transport in route to DHMC, Mason's pulse continued, but was not sustained without frequent application of CPR.

126.   Upon arrival in Hanover, New Hampshire at 7:13 P.M., Plaintiff Mason was transferred to the care of the Emergency Department (ED) at Dartmouth Hitchcock.  ED personnel continued to provide resuscitation efforts to Mason for an additional 24 minutes without response.

127.   Plaintiff Mason was pronounced dead by Dr. Daniel Croft of the ED at DHMC at 7:40 P.M. on June 20, 2012 according to the Investigation Report of the Chief Medical Examiner of the State of New Hampshire.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

128.  As a direct and proximate result of the Defendants' unconstitutional and unlawful acts referenced above, Plaintiff Mason suffered the following injuries and damages:

    A. Violations of his constitutional rights under the Fourth and Fourteenth Amendments to the United Sates to be free from unreasonable seizure by Defendants' use of grossly excessive force on his person;

    B.  Loss of his life; and,

    C.  Physical pain and suffering as well as emotional trauma and suffering requiring medical treatment.

129.  Plaintiff Rhonda Taylor suffered the untimely end of her relationship with her son, with the corresponding lost of his service, protection, care, assistance, companionship, comfort, guidance, counsel and advice, and was forced to incur funeral and burial expenses.

130.  The actions of the Defendants violated the clearly established and well settled constitutional rights of Plaintiff Mason to be:

    a.  Free from unreasonable seizure of his person; and,

    b. Free from the use of excessive, unreasonable and unjustified force against his person.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

26

## CAUSES OF ACTION

I. First Cause of Action—Deprivation of Mason's Constitutional Rights via § 1983

131.  Plaintiffs hereby incorporate paragraphs 1 through 130 above.

132.  Plaintiffs allege as a first cause of action that Defendant Shaffer willfully and in violation of the Fourth and Fourteenth Amendment to the United States Constitution  as implemented  by 42 U.S.C. § 1983 subjected Mason to an unreasonable seizure employing unreasonable use of force not reasonably justified by the attendant circumstances.

133. Plaintiff Mason lost his life after incurring substantial pain and injury as a direct and proximate result of the Defendant Shaffer's willful unconstitutional actions.  Mason filed no action during his lifetime to recover for the injuries resulting from the unlawful acts set forth above.

134.  Pursuant to 14 V.S.A. §§ 1451-1453, Plaintiff Taylor as administratrix of the estate of her son claims damages for pain and suffering incurred by Mason resulting from the unlawful acts set forth above.

II. Second Cause of Action—Violation of § 504

135.  Plaintiffs incorporate paragraphs 1 through 134 above.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

136.  Plaintiffs allege as a second cause of action that the Defendants in violation of § 504 failed to provide Mason with any reasonable accommodation to his known qualifying disability in their interactions with Mason on the day of his death.

137.  As recipient of federal funds, Defendants L'Esperance and Flynn in their official capacities as chief executives of DPS and VPS respectively both had a duty to comply with § 504 prohibiting discrimination against person with disabilities, a history of having disabilities or who are perceived to have a disability.  As of the date of his death, Mason met all three prongs of eligibility application of § 504.

138. The Defendants had full knowledge of Plaintiff Mason's condition given the information that was transmitted by DHMC to VSP dispatch and the further information that was provided by Theresa Davidonis to VSP dispatch and to Troopers Schlesinger and Drew in person that Mason had a seizure disorder as well as other significant mental health issues.

139.  Theresa Davidonis informed both VSP dispatch and Troopers Schlesinger and Drew that Mason had suffered a seizure on June 19, 2012, the day before he was killed by the Defendants' unlawful conduct.

140.  Further, Theresa Davidonis informed Defendants and/or their agents that Mason suffered significant after effects to his seizure activity for 24 hours after the seizure.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

28

Such after-effects included general disagreeableness, appearing to be intoxicated when, in fact, he was not, as well as Mason having difficulty in processing events.

141.  Ms. Davidonis informed the Defendants and their agents that the best thing to do for Mason under these circumstances was to leave him to his own devices.  In fact, she specifically requested Defendants to do just that.  Unfortunately, Defendants failed to accept and act upon this request for reasonable accommodations with the resulting tragic outcomes.

142.  As a direct and proximate result of Defendants' unlawful acts, Plaintiff Taylor incurred substantial emotional and physical harm as well as financial loss due to Defendants' violation of §504 set forth above.

143.  Plaintiff Mason lost his life after incurring substantial pain and injury as a direct and proximate result of the Defendants' acts in violation of the §504 set forth above.

III. Third Cause of Action—Violation of the ADA

144.  Plaintiffs incorporate paragraphs 1 through 143 above.

145.  Plaintiffs allege as a third cause of action that the Defendants in violation of the ADA failed to provide Mason with any reasonable accommodation to his known qualifying disability in their interactions with Plaintiff Mason on the day of his death.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

146.  As providers of governmental services, Defendants L'Esperance and Flynn had a duty to comply with Title II of the ADA prohibiting discrimination against person with disabilities, a history of having disabilities or who are perceived to have a disability.  As of the date of his death, Mason met all three prongs of eligibility application of the ADA.

147.  As a direct and proximate result of the Defendants' violation of the ADA set forth above, Plaintiff Taylor incurred substantial emotional and physical harm as well as financial harm.

148.  Plaintiff Mason lost his life after incurring substantial pain and injury as a direct and proximate result of the Defendants' acts in violation of the ADA as set forth above.

## IV. Fourth Cause of Action—Personal Injury via Survival Action

149.  Plaintiffs incorporate paragraphs 1 through 148 above.

150.  Plaintiffs allege as a fourth cause of action that the Defendant Shaffer, aided and abetted by the other Defendants, assaulted and battered Plaintiff Mason.

151.  Plaintiff Mason lost his life after incurring substantial pain and injury as a direct and proximate result of the Defendant Shaffer's unlawful assault and battery.  Plaintiff Mason filed no action during his lifetime to recover for the injuries resulting from the unlawful acts set forth above.  Pursuant to 14 V.S.A. §§ 1451-1453, the Plaintiff Taylor

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

30

as Administratrix of the estate of her son claims damages for pain and suffering incurred by Plaintiff Mason resulting from the unlawful acts set forth above.

## V. Fifth Cause of Action—Negligence

152.  Plaintiffs incorporate paragraphs 1 through 151 above.

153.  Plaintiffs allege that Defendants' were grossly negligent by their failure to immediately inform all persons and agencies involved in the seizure of Mason that he had a history of seizure disorder and had suffered a seizure on the day preceding his fatal shooting by Defendant Shaffer's use of Taser.

154.  Defendants L'Esperance and Flynn were grossly negligent in their hiring, training and retention of Defendant Shaffer.

155. Defendants L'Esperance and Flynn were grossly negligent in their issuing Defendant Shaffer the Taser weapon used to kill Mason given that Shaffer had not been trained in interacting with persons experiencing mental crises, the so-called Act 80 training.

156.  Defendants L'Esperance and Flynn were grossly negligent in their failure to train VSP dispatchers to assess and report whether the subject of a wellness check such as

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

Mason was a person with a qualifying disability requiring reasonable accommodation pursuant to the ADA and 504.

157.  Defendants L'Esperance and Flynn were grossly negligent in their failure to train VSP dispatchers of the legal requirement that they transmit to VSP officers that the subject of wellness person such as Mason was a person with a qualifying disability requiring reasonable accommodation pursuant to the ADA and 504.

158.  Defendants L'Esperance and Flynn were grossly negligent in their failure to hold Defendant Shaffer accountable under the VSP's Use of Force and ECD policies.

159.  Plaintiffs alleged that the Defendant Zorn was grossly negligent by his failure to inquire of Troopers Schulze and Schlesinger whether they had obtained any information from Theresa Davidonis that Mason was a person with a qualifying disability requiring the provision of a reasonable accommodation.

160.  Defendants L'Esperance and Flynn were grossly negligent in their failure to train VSP officers of their duty to share information with Defendant Shaffer and others on the scene that Mason was a person with a qualifying disability requiring the provision of reasonable accommodation.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

161.  Defendants L'Esperance and Flynn failure to train their officers and agents was a direct and proximate cause of Mason's injuries and death and the resulting loss of consortium by Taylor as detailed below.

## VI. Sixth Cause of Action—Parental Loss of Consortium

162.  Plaintiff Taylor incorporates paragraphs 1 through 161 above.

163.  Plaintiff  Taylor alleges as a sixth cause of action that that Defendants' unlawful acts which were the direct and proximate cause of Plaintiff Mason's death thus depriving Plaintiff Mason of the continued consortium of her son.  Pursuant to *Clymer v. Webster,* 156 Vt. 614, 596 A.2d 905 (1991), this action is cognizable in Vermont.

164.  As a direct and proximate result the Defendants' unlawful acts, Plaintiff Taylor has suffered immense emotional harm as well as significant financial loss due to the unlawful acts of the Defendants' that resulted in the homicide of her son, Plaintiff Mason.

## VII.  Intentional Infliction of Emotional Distress-Survival Action

165.  Plaintiffs hereby incorporate paragraphs 1 through 164 above.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

165.  Plaintiffs allege as a sixth cause of action that Defendant Shaffer willfully and intentional inflicted emotional distress upon Mason when he pointed his rifle at him without sufficient provocation, and then proceeded to fire his Taser into Mason's chest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a)  Award Plaintiffs damages adequate to compensate Plaintiffs for the untimely death of  Macadam Lee Mason as well as his pain and suffering before his death;

b)   Award Plaintiff Mason punitive damages against Defendant Shaffer for his willful and malicious unconstitutional and unlawful acts that were the direct and proximate cause of Plaintiff Mason's death;

c)  Award reasonable attorney's fees and costs to Plaintiffs;

d)   Award compensatory and punitive damages to Plaintiff Taylor for her loss of her son's consortium including her emotional distress, and loss of income stemming from the violations of his rights as stated in this Complaint; and,

e)  Award such other and further relief as this Court may deem appropriate.

Plaintiffs respectfully demand a trial by jury in this matter.

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461

Dated this 18th Day of June, 2014 at Hinesburg, Vermont.

Rhonda Taylor, Administratrix
For the Estate of Macadam Lee Mason

Rhonda Taylor, Individually

By:

Robert Appel
Kohn Rath Danon & Appel, LLP
P.O. Box 340
Hinesburg, VT 05461
Tel: (802) 482-2905

KOHN RATH DANON
& APPEL, LLP
ATTORNEYS AT LAW
P. O. BOX 340
HINESBURG, VERMONT
05461