UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| RHONDA TAYLOR, Individually and as Personal Representative of the estate of MACADAM LEE MASON, by and through its Administratrix, RHONDA TAYLOR, <br><br> Plaintiffs, <br><br> v. <br><br> VERMONT STATE SENIOR TROOPER DAVID SCHAFFER[1], in his individual and official capacities; VERMONT STATE POLICE DET. SGT. DAVID ZORN, in his individual and official capacities; COL. THOMAS L'ESPERANCE, COMMANDER OF THE VERMONT STATE POLICE, in his individual and official capacities; and COMMISSIONER KEITH FLYNN, in his individual and official capacities, <br><br> Defendants. | Case No. 1:14-cv-123-jgm |

ORDER ON MOTION TO DISMISS AND
MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADINGS
(Docs. 7, 11, 14)

I. Introduction

Macadam Lee Mason died after Defendant David Shaffer, a Vermont State Police officer, deployed a taser against him on June 20, 2012. Mason's mother, Rhonda Taylor, brings suit on behalf of his estate for violations of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983, § 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, common law assault and battery, and common law negligence. In her personal capacity, Taylor brings claims for

---

[1] Defendants state the names of David Shaffer and Jacob Zorn are misspelled in the caption of the Complaint. (Doc. 7 at 1, n.1.) The Clerk is directed to correct the docket caption to reflect the correct spelling of each name.

parental loss of consortium and intentional infliction of emotional distress. Defendants moved to dismiss these claims. (Doc. 7.)

Plaintiff Taylor subsequently moved for permission to file supplemental pleadings. (Doc. 11.) The supplemental materials support her argument that she was in fact the administratrix of Mason's estate at the time she filed her Complaint. After the Civil Division of the Orange County Superior Court reappointed her administratrix of Mason's estate, Taylor again moved to file supplemental pleadings. (Doc. 14.) Defendants oppose both motions. (Docs. 13, 21.)

Based on the following, Taylor's Motions for Leave to File Supplemental Pleadings (Docs. 11, 14) are GRANTED. Defendants' Motion to Dismiss (Doc. 7) is GRANTED in part and DENIED in part.

II.   Background

The facts are taken from the Complaint. On June 20, 2012, Macadam Lee Mason died after Defendant David Shaffer, a Vermont State Police ("VSP") officer, deployed a taser against him. (Doc. 1 (Compl.) ¶ 4.) The Complaint alleges that Mason suffered from a seizure disorder due to traumatic brain injury (Id. ¶¶ 20-21) and several other diagnosed mental disorders (Id. ¶¶ 22, 34, 35).

On June 19, 2012, Mason suffered a seizure. (Id. ¶ 23.) The next day he exhibited erratic behavior and called his mental health case worker to report he was having a difficult time and experiencing suicidal ideations. (Id. ¶ 26.) The case worker told Mason to call his neurologist at Dartmouth Hitchcock Medical Center ("DHMC"). (Id. ¶ 27.) DHMC later called VSP to report a call from an unidentified man who had stated he wanted to slit his throat in the back yard. (Id. ¶ 28-29.) A reverse phone check indicated the caller was Mason, who was at the home of Theresa Davidonis, his life partner. (Id. ¶ 30.) DHMC asked the police the check on Mason's welfare.

(Id. ¶ 21.) Mason subsequently called DHMC a second time and informed them if police came to his location he hoped they would shoot him. (Id. ¶ 33.) DHMC reported this to VSP. (Id.)

In response to the first call from DHMC, VSP dispatched three troopers, Defendant Trooper Jacob Zorn, Trooper Abigail Drew, and Trooper Charles Schulze, to Davidonis' home to conduct a welfare check on Mason. (Id. ¶ 38.) The police called Davidonis and requested she return to her home. (Id. ¶ 41.) Davidonis told the police no one should be in her house (Id. ¶ 42) and there were no guns at her home (Id. ¶ 43). When she arrived at home she informed Troopers Drew and Schulze of Mason's seizure the previous day and told them he needed to be left alone. (Id. ¶ 46.) She asked VSP to leave the property and told them she would take care of Mason. (Id. ¶¶ 47-48.) After Davidonis returned to work, VSP continued to watch her home (Id. ¶ 65), calling her to report someone was in her house. (Id. ¶ 64.) Davidonis again told the police to leave Mason alone, as this was the best response to his "post-epileptic seizures." (Id. ¶ 67.) Davidonis returned when VSP told her they would enter her home if she did not return as soon as possible. (Id. ¶ 68.)

Defendant Trooper Shaffer, who had dealt with Mason in the past, arrived at 6:20 p.m. (Id. ¶¶ 71, 73.) Shaffer had read the report stating the welfare check on Mason was prompted by a call from DHMC indicating Mason was in the midst of a mental health episode. (Id. ¶ 70.) Zorn instructed Shaffer to help set up a perimeter of the residence. (Id. ¶ 73.) In the perimeter, Shaffer observed Mason walking out of the woods. (Id. ¶ 78.) Shaffer approached Mason with his M4 rifle aimed at Mason and requested he show his hands. (Id. ¶ 80.) He ordered Mason to lie down on the ground, and Mason slowly complied. (Id. ¶ 84.) When Shaffer approached Mason, Mason got up and swore at Shaffer, stating "Why don't you just go ahead and shoot me?" (Id. ¶ 85.) Shaffer then switched from his rifle to an X26 Taser. (Id. ¶ 86.) Shaffer claims Mason was walking toward him with his right hand flipping him off and his left hand clenched (Id.), but Davidonis and her son,

3

Eriks Davidonis, claim Mason walked toward Shaffer with his hands in the air (Id. ¶ 87.) Shaffer claims he felt threatened by Mason, and shot Mason in the chest with his taser. (Id. ¶ 89.) Mason immediately collapsed and VSP handcuffed him, only to remove the handcuffs in order to perform CPR on him. (Id. ¶¶ 111-16.) Shaffer called for EMT and paramedic assistance at 6:23 p.m. (Id.) After being taken to the hospital, Mason died at 7:40 p.m. (Id. ¶ 127.)

Plaintiff Taylor, Mason's mother, was originally appointed administratrix of Mason's estate without objection, but on February 20, 2014 the Probate Division of Orange County Superior Court removed her and appointed Corinna Megalhaes, the mother of Mason's child. (Doc. 7-1.) Taylor contested this decision, and on November 3, 2014 the Civil Division of Orange County Superior Court entered an order affirming Taylor's continuous appointment as administratrix of Mason's estate. (Doc. 14-2.)

III.   Discussion

Defendants move to dismiss the Complaint, principally on the ground that Taylor lacked standing to file it. (Doc. 7.) Taylor opposes the Motion to Dismiss and moves to allow supplemental pleadings in opposition. (Docs. 11, 14). The supplemental pleadings support her assertion she was the proper administratrix of Mason's estate at the time she filed her Complaint.

A.   Standard of Review

When a motion to dismiss cites Rule 12(b)(1) as a grounds for dismissal, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (citation omitted). When deciding a motion to dismiss under Rule 12(b)(1), the burden is on the party invoking federal jurisdiction to prove facts to establish that jurisdiction. See Taite v.

4

Shinseki, No. 5:10-cv-270, 2011 WL 2414316, at *2 (D. Vt. June 14, 2011).  The court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue.  See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. at 678.  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

      B.      Administratrix Status

To sue on behalf of Mason's estate, Taylor must be the proper administratrix under Vermont law.  See Fed. R. Civ. P. 17(b)(3) (for all parties other than an individual or a corporation, capacity to sue is determined "by the law of the state where the court is located"); Weinstein v. Med. Ctr. Hosp. of Vt., Inc., 358 F. Supp. 297, 298 (D. Vt. 1972) ("Since the plaintiff instituted the suit as administratrix, her capacity to maintain the action is determined according to the law of Vermont.").  Vermont law provides that "[a]n executor or administrator may commence . . . in the right of the deceased, actions which survive to such executor or administrator and are necessary for the recovery and protection of the property rights of the deceased."  14 V.S.A. § 1401.  Survival causes of action for personal injury may be "commenced and prosecuted by or against the executor or administrator."  14 V.S.A. § 1453.  Actions for wrongful death must be brought by the deceased's

"personal representative." 14 V.S.A. § 1492. Taylor only has "capacity to maintain the present action" if she "has authority to proceed" from the probate court. Weinstein, 358 F. Supp. at 299.

Taylor was not administratrix on the date she filed suit, but the Civil Division of Orange County Superior Court has since reappointed her with retroactive effect. Taylor was originally appointed administratrix of Mason's estate on August 9, 2012, but was removed by the Orange County Probate Division on February 20, 2014. Taylor filed her Complaint on June 18, 2014. On November 3, 2014 the Civil Division appointed Taylor administratrix by an order that applied retroactively -- it affirmed "the continuous appointment of Rhonda Taylor [as administratrix of Mason's estate] made by the Probate Division on August 9, 2012." (Doc. 14-2.)

1.  Leave to File Supplemental Pleadings (Docs. 11, 14)

Taylor moves for leave to file supplemental pleadings supporting her status as administratrix, attaching documents from the Probate Division and Civil Division. (Docs. 11, 14.)

As an initial matter, Defendants argue Taylor failed to attempt to contact and confer with Defendants' counsel to obtain agreement to the relief requested in the Plaintiffs' Motion, as required by the Local Rules. See D. Vt. L.R. 7(a)(7) ("A party filing a non-dispositive motion must certify that the party has made a good faith attempt to obtain the opposing party's agreement to the requested relief."). Local Rule 7(a)(7) is more than a pro forma requirement:

> Plaintiffs must . . . seek Defendant's consent to their proposed Amended Complaint before . . . [filing]. This requirement is not a meaningless gesture. It allows the parties through the consent process to narrow the scope of any dispute regarding the proposed amendments prior to seeking judicial involvement regarding the same. Of course, it further follows that a defendant may withhold its consent only on a good faith basis.

Norton-Griffiths v. Wells Fargo Home Mortg., No 5:10-cv-169, 2011 WL 884456, at *5 (D. Vt. Mar. 11, 2011). Indeed, had Taylor sought Defendants' consent before moving to file supplemental pleadings, the parties may have had opportunity to clear up an ambiguity the Court presently faces:

6

whether Taylor merely wishes to supplement her Complaint with attachments (Docs. 14-1, 14-2) or if she intends to file a supplemental pleading. Defendants express concern that they cannot raise defenses to the supplemental pleadings with specificity until Taylor files proposed supplemental pleadings. (Doc. 13, at 3 n.1.)

If Taylor wishes to file an actual supplemental pleading beyond the attachments, she must first seek Defendants' consent, as required by Local Rule 7(a)(7). See Norton-Griffiths, 2011 WL 884456, at *5 (extending deadline for plaintiffs to seek defendant's consent to file an amended complaint). Nonetheless, the Court will consider the state court filings attached to Taylor's Motions for Leave to File Supplemental Pleadings in resolving the Motion to Dismiss. See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (a court may take judicial notice of public records, including state court filings, in deciding a motion to dismiss).

The Court finds it will not prejudice Defendants' rights to consider these additional materials supporting Taylor's status as administratrix. At this point Defendants have thoroughly stated their arguments concerning Taylor's administratrix status. See Docs. 7, 10, 13, 21. The attachments, and presumably any additional forthcoming pleading, merely support what Taylor has already pleaded: that she is "the administratrix and sole legal representative of the estate of her son." (Compl. ¶ 3.) If Taylor ultimately seeks leave to file supplemental pleadings and those pleadings go beyond the scope of establishing Taylor's status as administratrix, Defendants may seek leave of the Court to assert new defenses. See 1 Motions in Fed. Court § 5:240 (3d ed.) (if "a pleading is merely supplemented, no new counterclaims or affirmative defenses are permitted unless they are in response to the portions of the pleading that are supplemented").

2.      Standing As Administratrix

Defendants argue that Counts I, II, III, IV, and V which are all survival claims brought by Taylor on behalf of Mason's estate, should be dismissed because Taylor was not the administratrix of the estate at the time she filed the Complaint and therefore did not have standing when she sued.[2] See Dutil v. Mayette, 395 F. Supp. 922 (D. Vt.), aff'd 517 F.2d 936 (2d Cir. 1975) (dismissing a wrongful death action when plaintiff failed to obtain administratrix status in Vermont); Weinstein, 358 F. Supp. at 299 ("Since the plaintiff must respond to the orders of the state court having jurisdiction to determine the beneficiaries and decree the proceeds, she is without capacity to maintain the present action until she has authority to proceed by way of ancillary letters of administration."). In her briefing, Taylor first explains she will regain administratrix status and asserts standing is proper, see Doc. 8, at 2-4, and later announces she has obtained administratrix status with retroactive effect, see Doc. 14.

Although cases brought by a purported administratrix who has not met the requirements of Vermont law have been dismissed, see e.g., Weinstein, 358 F. Supp. 297, courts have generally allowed cases to proceed when a plaintiff can establish administratrix status after filing her complaint. See, e.g., Porter v. Dartmouth Coll., 678 F. Supp. 2d 15 (D.N.H. 2010) (finding parents have standing to maintain their wrongful death suit when they filed within the statute of limitations but were not appointed administrators of their daughter's estate until after the limitations period); Wozniak v. United States, 701 F. Supp. 259, 261 (D. Mass. 1988) (plaintiff "satisfies the administratrix requirement . . . in that her later appointment as an administratrix 'related back' to her prior actions on behalf of the estate"). In Dutil and Weinstein, where courts in this district

---

[2] Taylor's federal civil rights claims are survival claims. See Murray v. Connetquot Cent. Sch. Dist. of Islip, 54 F. App'x 18, at *2 (2d Cir. 2002) ("A § 1983 claim survives death if applicable state law creates a right of survival.") (citations and quotations omitted).

8

dismissed claims brought by individuals who had not acquired administratrix status under Vermont law, the plaintiffs unsuccessfully argued their adminstratrix status in other jurisdictions was sufficient. Here, Taylor sought to establish her status as administratrix under Vermont law, ultimately with success. Accordingly, the Court finds Taylor has standing to proceed with her action, and the Motion to Dismiss is denied to the extent it seeks dismissal based on standing.[3]

### 3.   Statute of Limitations

Defendants also argue that even if Taylor now has standing as administratrix, the two-year statute of limitations expired on June 20, 2014.[4] (Doc. 21.) This argument is not distinguishable from the argument that Taylor lacked standing at the time she filed her Complaint and fails for similar reasons. Courts have found claims by plaintiffs who only obtain administratrix status after the statute of limitations has expired relate back to a timely complaint. See, e.g., Davis v. Piper Aircraft Corp., 615 F.2d 606 (4th Cir.), cert. denied, 448 U.S. 911 (1980) (granting leave to amend a complaint when plaintiff's appointment as administrator occurred after the applicable statute of limitations had run); Richardson v. Reinforced Plastic Co., 33 Fed. R. Serv. 2d 445, at *2

---

[3] Defendants also argue that Count VI, a claim for loss of consortium Taylor brought in her personal capacity, should be subsequently dismissed under 28 U.S.C. § 1367(c)(3) because it is a state law claim this Court lacks subject matter jurisdiction to hear unless it is pendent to federal claims. See Brzak v. United Nations, 597 F.3d 107, 113-14 (2d Cir. 2010) (stating "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well") (quotations omitted). Because the survival claims, which include federal claims, are not dismissed, the Court has supplemental jurisdiction over the related claim in Count VI.

[4] Vermont has a two-year statute of limitations for wrongful death actions, running from the "discovery of the death of the person." 14 V.S.A. § 1492(a). Vermont also has a two-year statute of limitations for survival actions, running from the date of the appointment of the administrator of the estate. See 12 V.S.A. § 557(a); see also Estate of Harris v. Eichel, 152 Vt. 180, 182 (1988) (interpreting 12 V.S.A. § 557(a) to provide a "two-year post-appointment limitations period"). Mason died on June 20, 2012 and Taylor was first appointed administratrix on August 9, 2012; the Probate Court reappointed Taylor administratrix on November 3, 2014, more than two years after both Mason's death and her initial appointment.

(D. Me. 1982) (declining to dismiss plaintiff's claim based on the statute of limitations when she obtained administratrix status after the statute expired because the claim related back to the timely commencement of the action); Kiley v. Lubelsky, 315 F. Supp. 1025, 1028 (D.S.C. 1970) ("In a great majority of the cases . . . it has been held that such an appointment [as administratrix] made after the statute [of limitations] has run against a claim will relate back to validate actions taken on the claim within the statutory period by the person subsequently appointed administrator thus barring reliance upon the defense of limitations by the party against whom the claim is asserted on behalf of the estate."). Accordingly, the statute of limitations does not bar Taylor's claims, and the Motion to Dismiss is denied to the extent it seeks dismissal based on the statute of limitations.

    C.        ADA Claims (Counts II and III)

In Counts II and III Taylor alleges all Defendants violated Mason's rights under § 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA"), both in their individual capacities and as state officials.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132 (1990). Because the language in § 504 of the Rehabilitation Act, 29 U.S.C. § 794, is substantially similar, the same analysis applies to those claims. See Hargrave v. Vermont, 340 F.3d 27, 35 (2d Cir. 2003). Neither of these statutes provides for actions against state officials in their individual capacities. See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001). Thus, the Motion to Dismiss Counts II and III against Defendants in their individual capacities is granted. Taylor only states ADA claims against Defendants in their official capacities.

To prove an ADA claim a plaintiff must establish "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." Hargrave, 340 F.3d at 34-35. These requirements apply to claims under § 504 as well. See id. at 35. Defendants argue the ADA was inapplicable to Mason's arrest.

Claims stemming from a police arrest fit oddly into the ADA framework because it is not readily clear a police encounter qualifies as a "program, service or activity." See Ryan v. Vt. State Police, 667 F. Supp. 2d 378, 386 (D. Vt. 2009). Courts have, however, recognized two types of ADA claims in the context of a police encounter: (1) a "wrongful arrest claim," in which police arrest a suspect based on his disability rather than any criminal activity; and (2) a claim alleging "failure to provide reasonable accommodations," where police execute a proper arrest but "fail to reasonably accommodate [a plaintiff's] disability during the investigation or arrest, causing him to suffer greater injury or indignity than other arrestees." Id. at 387.

Taylor's ADA claim appears to fall into the latter category. She alleges VSP "failed to accept and act upon [Davidonis'] request for reasonable accommodations" when they refused to leave the area outside her home. (Compl. ¶ 141.) Defendants argue the ADA required the VSP to "provide arrestees who are disabled with reasonable accommodations once an arrest of a disabled person had been accomplished," and therefore did not require the VSP provide reasonable accommodations to Mason before he was arrested. Valanzuolo v. City of New Haven, 972 F. Supp. 2d 263, 273-74 (D. Conn. 2013) (emphasis added) (citing Ryan, 667 F. Supp. 2d at 389). In addressing a police officer's use of deadly force against a mentally disturbed man approaching the officer with a knife, the Fifth Circuit found "[o]nce the area was secure and there was no threat to human safety, the [defendants]

would have been under a duty to reasonably accommodate [plaintiff's] disability in handling and transporting him to a mental health facility." Hainze v. Richards, 207 F.3d 795, 802 (5th Cir. 2000); see also De Boise v. Taser Int'l, Inc., 760 F.3d 892, 899 (8th Cir. 2014) (ADA did not apply to an arrest of a man with schizophrenia because "[d]ue to the unexpected and rapidly evolving circumstances, the officers were not required to hesitate and consider other possible actions in the course of making such split-second decisions") (quotations and citation omitted); Buchanan v. Maine, 469 F.3d 158, 178 n.13 (1st Cir. 2006) ("It is questionable whether the ADA was intended to impose any requirements on police entering a residence to take someone into protective or other custody beyond the reasonableness requirement of the Fourth Amendment.").

Taylor argues the exigency present in Hainze did not exist when Shaffer deployed a taser against Mason. (Doc. 11, at 4.) Hainze explains courts should consider whether the police had (1) secured the scene and (2) ensured there was no threat to human life. See id. If the scene was not secure or there was a threat to human life, it is likely Shaffer's use of force was reasonable. See, e.g., Salinas v. City of New Braunfels, 557 F. Supp. 2d 771, 775 (W.D. Tex. 2006) ("Hainze stands for the limited proposition that an on-the-street police response to a disturbance involving a mentally or physically disabled suspect does not fall within the ambit of Title II prior to the officer's securing of the scene and ensuring that there is no threat to human life."). This is because "where the incident presents an immediate danger because the individual is armed and charging at police" or "the police have no information regarding the potential danger to others who may be present where a call has been made because of a 'tense situation' . . . then no reasonable accommodation of a disability may be required or possible." Wingard v. Pa. State Police, No. Civ. A. 12 1500, 2013 WL 3551109, at *6 (W.D. Pa. July 11, 2013) (internal citation omitted); see also Anthony v. City of New York, No. 00-civ-4688, 2001 WL 741743, at *11 (S.D.N.Y. July 2, 2001), aff'd 339 F.3d 129 (2d Cir. 2003)

(adopting Fourth Amendment reasonableness analysis as the test to determine whether police violated the ADA in making an arrest). If a jury were to find, however, "the situation had been defused sufficiently" at the time Shaffer deployed his taser against Mason, then the Hainze exception to the ADA does not apply and the use of force may have been unreasonable. Sheehan v. City & Cnty. of San Francisco, 743 F.3d 1211, 1233 (9th Cir.), cert. granted sub nom. City & Cnty. of San Francisco, Cal. v. Sheehan, 135 S. Ct. 702 (2014).

In Sheehan, plaintiff stopped taking medication and threatened her social worker, who then called the police. See id. at 1215. When the police arrived to take her into custody, she grabbed a knife and threatened to kill them. The officers retreated to the hallway for safety and called for backup, but then reentered plaintiff's room before backup had arrived. When plaintiff again threatened them, the police shot her. See id. at 1216. Plaintiff sued, raising an ADA claim based on a failure to accommodate her disability. The court explained plaintiff bore "the initial burden of producing evidence of the existence of a reasonable accommodation," and she met that burden at the motion to dismiss stage by asserting "the officers should have respected her comfort zone, engaged in non-threatening communications and used the passage of time to defuse the situation rather than precipitating a deadly confrontation." Id. at 1233. The Ninth Circuit declined to uphold the district court's dismissal of plaintiff's claim, "acknowledg[ing] that the officers were forced to make split-second decisions" but concluding a jury "could find that the situation had been defused sufficiently, following the initial retreat from Sheehan's room, to afford the officers an opportunity to wait for backup and to employ less confrontational tactics, including the accommodations that [plaintiff] asserts were necessary." Id.

On the pleadings, the Defendants' encounter with Mason resembles the encounter in Sheehan. Taylor alleges the Defendants knew of Mason's disability (Compl. ¶ 138), the Defendants

13

could have accommodated that disability by granting Davidonis' request to "leave him to his own devices" (Id. at ¶ 141), the scene was secure (Id. at ¶¶ 60-61), and there was no threat to human life because Mason did not have a weapon (Id. at ¶ 88). Furthermore, Taylor alleges facts suggesting any exigency Shaffer faced arose only after VSP had secured the perimeter. (Id. ¶¶ 76-82.) Under these facts, a jury could find Shaffer faced no exigency when he approached Mason, he knew of Mason's disability, he could reasonably accommodate Mason's disability by leaving him be, and he failed to accommodate Mason's disability. See, e.g., Morais v. City of Philadelphia, No. 06 Civ. A. 582, 2007 WL 853811, at *12 (E.D. Pa. Mar. 19, 2007) (denying motion for summary judgment on ADA claims when "the exigency of the situation is a materially disputed fact"); Salinas, 557 F. Supp. 2d 771 (denying a motion to dismiss when deaf plaintiff alleged the scene was secure, she posed no threat to officer safety, and she had requested and been denied an interpreter).

Accordingly, the Motion to Dismiss Counts II and III against Defendants in their official capacities is denied.

    D.    <u>Eleventh Amendment Sovereign Immunity for Official Capacity Claims</u> (Counts I, IV, V, VI, and VII)

"[T]he Eleventh Amendment bars suits seeking damages in federal court by private citizens against a state, its agencies, or its officials unless the state has waived its immunity or Congress has properly abrogated that immunity." Thompson v. Pallito, 949 F. Supp. 2d 558, 571 (D. Vt. 2013). Vermont has not waived sovereign immunity under § 1983, see 12 V.S.A. § 5601(g), and therefore "Vermont state officials cannot be subject to suit in their official capacities for retrospective relief, such as money damages, under § 1983." Id. at 572. The Eleventh Amendment bars Counts I, IV, V, VI, and VII to the extent those claims are brought against Defendants in their official capacities.

The Court dismisses those claims to that extent under Fed. R. Civ. P. 12(b)(1).[5] See Woodman v. State Police (St. Johnsbury), No. 1:12-cv-43, 2012 WL 5409662, at *2 (D. Vt. Nov. 6, 2012) (finding the VSP protected by sovereign immunity and dismissing claims against it).

    E.    Common Law Individual Capacity Claims Against L'Esperance and Flynn (Count V)

In Count V, Taylor asserts VSP Commander L'Esperance and VSP Commissioner Flynn "were grossly negligent in their hiring, training and retention of Shaffer" and "in their issuing Defendant Shaffer the Taser weapon used to kill Mason given that Shaffer had not been trained in interacting with persons experiencing mental crises." (Compl. ¶¶ 154-55.) In the Motion to Dismiss, Defendants construe Count V to raise federal constitutional claims and argue § 1983 requires dismissal because the Complaint does not allege personal involvement by L'Esperance and Flynn. (Doc. 7, at 13-14.) Taylor, however, frames Count V as containing pendent state common law negligence claims against L'Esperance and Flynn in their individual capacities. See Doc. 8, at 8-9. Thus, Defendants' § 1983 arguments are inapposite, and the Court denies the Motion to Dismiss Count V against L'Esperance and Flynn in their individual capacities.[6]

---

[5] Counts II and III, Taylor's claims under the ADA discussed above in Part C, are not dismissed based on Eleventh Amendment sovereign immunity even though those claims are brought against Defendants in their official capacities. Although "courts normally consider Eleventh Amendment issues before the merits, in the ADA context, an examination of the merits is the first step of the Eleventh Amendment analysis." Elbert v. N.Y.S. Dep't of Corr., 751 F. Supp. 2d 590, 596 n.5 (S.D.N.Y. 2010) (citing United States v. Georgia, 546 U.S. 151, 159 (2006)). This is because Defendants' sovereign immunity under Title II depends on the facts, as "sovereign immunity will be abrogated under Title II when a plaintiff can demonstrate an actual Fourteenth Amendment violation." Hilton v. Wright, 928 F. Supp. 2d 530, 556 (N.D.N.Y. 2013) (rejecting sovereign immunity defense without prejudice when it cannot be determined as a matter of law that a Fourteenth Amendment violation did not occur). Section 504, however, abrogates sovereign immunity as a matter of law. See id. (finding "it is well-established that sovereign immunity has been validly abrogated under Section 504"). Defendants have not raised Eleventh Amendment sovereign immunity as a defense to the Title II claim at this time. (Doc. 10, at 7.)

[6] To the extent Count V could be construed as raising claims under § 1983, it is dismissed due to Taylor's failure to plead "personal involvement" of defendants in alleged constitutional

IV.     Conclusion

Taylor's Motions for Leave to File Supplemental Pleadings (Docs. 11, 14) are GRANTED. Defendants' Motion to Dismiss (Doc. 7) is GRANTED in part and DENIED in part. The Motion to Dismiss is GRANTED as to claims against Defendants in their <u>official capacities</u> as enumerated in Counts I, IV, V, VI, and VII, and as to claims against Defendants in their <u>individual capacities</u> as to Counts II and III. The Motion to Dismiss is DENIED as to Counts I, IV, V, VI, and VII against Defendant Shaffer in his individual capacity; as to Counts IV, V, and VI against Defendant Zorn in his individual capacity; as to Counts V and VI against Defendants L'Esperance and Flynn in their individual capacities; and as to Counts II and III against Defendants in their official capacities.

Dated at Brattleboro, in the District of Vermont, this 10th day of February, 2015.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge

---

deprivations. <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 886 (2d Cir. 1991). The Complaint does not plead sufficient facts to show either that L'Esperance or Flynn "knew or should have known of a problematic pattern of employee actions," <u>Raspardo v. Carlone</u>, 770 F.3d 97, 117 (2d Cir. 2014), or that L'Esperance or Flynn was on notice of any prior unconstitutional conduct by Shaffer, see <u>Kucera v. Tkac</u>, No. 5:12-cv-264, 2013 WL 1414441, at *7 (D. Vt. Apr. 8, 2013). Although it is somewhat odd to permit common law negligence actions against the police where a § 1983 claim would be denied, the unavailability of a § 1983 claim does not preclude liability for common law negligence. See <u>Alexander v. D.C.</u>, No. 95-1400, 1997 WL 51717, at *3 n.2 (D.D.C. Feb. 6, 1997).